# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| **JOSE ROMAN,** | § | |
| | § | |
| **Movant,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 7:20-CV-0102** |
| | § | **CRIM. ACTION NO. 7:16-CR-0876-8** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION

Movant Jose Roman, USM No. 51238-424, a federal prisoner proceeding *pro se*, initiated this action pursuant to 28 U.S.C. § 2255 by filing a Motion to Vacate, Set Aside, or Correct Sentence (the "Section 2255 Motion"). (Civ. Dkt. No. 1; Cr. Dkt. No. 1090).[1]

As grounds for relief from his conviction and sentence for conspiracy to possess with intent to distribute five kilograms or more of cocaine, Movant raises Sixth Amendment claims of ineffective assistance of counsel affecting his guilty plea, sentencing, and direct appeal to the Court of Appeals for the Fifth Circuit. At the center of these claims is the application of the United States Sentencing Guidelines (the "Guidelines"), specifically, the two-level enhancement under § 2D1.1(b)(1) for the possession of a dangerous weapon and the "safety valve" under § 5C1.2(a), which generally allows for sentencing below certain statutory mandatory minimums.

---

[1] Unless otherwise noted, citations to specific pages in the record refer to the pagination of docket entries in the Court's case management/electronic case-filing (CM/ECF) system. As used here, "Civ. Dkt." is a citation to the docket entries in Civil Action No. 7:20-CV-0102, and "Cr. Dkt." is a citation to the entries in Criminal Action No. 7:16-CR-0876-8.

The Government has filed a Motion for Summary Judgment, arguing that Movant is not entitled to substantive relief and that the Section 2255 Motion should be dismissed without an evidentiary hearing. (Civ. Dkt. No. 5; Cr. Dkt. No. 1096).

This case was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). After review of the record and relevant law, the undersigned respectfully RECOMMENDS that the Motion for Summary Judgment (Civ. Dkt. No. 5; Cr. Dkt. No. 1096) be GRANTED, that the Section 2255 Motion (Civ. Dkt. No. 1; Cr. Dkt. No. 1090) be summarily DENIED, that Movant's grounds for § 2255 relief be DISMISSED with prejudice, and that this civil action be DISMISSED. The undersigned also RECOMMENDS that a Certificate of Appealability be DENIED.

# I. BACKGROUND

## A. Offense Conduct

Movant does not deny that he was part of a large-scale drug trafficking organization the operations of which encompassed the bulk smuggling of cocaine from Mexico, through the Rio Grande Valley, for distribution in Illinois. (Cr. Dkt. No. 604 at 14-35; Cr. Dkt. No. 835 at 26-27).

According to the Presentence Report ("PSR") in this case, the organization's activities began as early as 2011 and were led out of the Valley by Ismael Lechuga ("Lechuga"), a co-defendant. (Cr. Dkt. No. 604 at 14, 16, 29). Another co-defendant, Omar Vazquez-Avendano ("Vazquez"), served as the organization's main cocaine distributor for the Illinois area out of Chicago. (*Id.* at 16, 18, 29, 32). Vazquez had several other co-defendants at his direction, including Movant and his brother, Rodrigo Roman (individually, "R. Roman," and collectively with Movant, "the Romans"), and Moises Ramos, who Movant recruited into the conspiracy. (*Id.* at 17-18, 30-32). The Romans and Ramos played the role of stash house caretakers and street-

level distributors. (*Id.* at 30-32). As part of his guilty plea, Movant admitted to coordinating a bulk cocaine delivery with Lechuga, Vazquez, and R. Roman. (Cr. Dkt. No. 835 at 26-27). Based on the PSR, the distribution of this cocaine also involved Ramos. (Cr. Dkt. No. 604 at 16-18, 32).

In March 2016, federal agents learned of Movant's involvement in the cocaine delivery and began electronic monitoring of his cellphone within the Chicago area. (*Id.* at 16; Cr. Dkt. No. 835 at 26-27). On March 5, 2016, agents surveilled Movant as he drove to R. Roman's residence. (Cr. Dkt. No. 604 at 16, 18). Once there, Movant switched vehicles and drove over to another residence occupied by Ramos. (*Id.* at 16-17). Meeting Movant in the garage, Ramos unloaded a duffel bag from the vehicle. (*Id.* at 16). Agents then moved in, apprehended Movant and Ramos, and seized the duffel bag, which contained approximately six kilograms of cocaine. (*Id.*). Upon Movant's consent, agents searched his vehicle and found bulk cash in an aftermarket compartment. (*Id.* at 17). Agents also found money counters, vacuum sealers, bulk cash, and heroin in the basement of Ramos's residence. (*Id.*). Executing a contemporaneous search of R. Roman's residence, agents found over four kilograms of cocaine, more than $48,000 in cash, and several firearms, including a homemade firearm silencer, a sawed-off shotgun, and two pistols (one of which had a threaded barrel to accept a silencer). (*Id.* at 18).

## B. Indictment and Retention of Counsel

On June 8, 2016, a grand jury returned a multi-count indictment against Movant and multiple other co-defendants.[2] (Cr. Dkt. No. 7). Movant was charged in Count One with conspiring to possess with intent to distribute five kilograms or more of cocaine from on or about June 2011 to on or about June 16, 2016, in the Southern District of Texas, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (hereinafter "Count One"). (*Id.* at 2-3).

---

[2] The indictment erroneously lists Movant's surname as "Ramon" instead of "Roman." (Cr. Dkt. No. 7).

Following his indictment and arrest, Movant retained as counsel Mr. Reynaldo M. Merino, who represented Movant throughout the proceedings before the trial court. (Cr. Dkt. No. 230).

## C. Guilty Plea

On July 5, 2017, the parties filed a notice of plea agreement. (Cr. Dkt. No. 541). Movant agreed to plead guilty to Count One.[3] (*Id.* at 1). In exchange for his plea, the Government agreed to recommend that Movant's offense level under the Guidelines be decreased by two points for acceptance of responsibility under § 3E1.1(a) of the Guidelines. (*Id.*).

At re-arraignment before the District Court, Movant pleaded guilty to Count One. (Cr. Dkt. Entry dated July 5, 2017). Vazquez also pleaded guilty. After the District Court engaged Movant in the colloquy required by Rule 11 of the Federal Rules of Criminal Procedure, the Government read into the record the factual basis in support of Count One, which went as follows:

> With respect to Count One, the cocaine conspiracy[,] [Vazquez and Movant] entered into an agreement to possess with intent to distribute over 5 kilograms of cocaine.
>
> In furtherance of this agreement[,] during the timeframe of this conspiracy[,] kilograms of cocaine would be transported from Mexico to the Southern District of Texas to [Vazquez] . . . in Chicago, Illinois . . . .
>
> * * *
>
> In furtherance of this agreement [Vazquez] in Chicago, Illinois would coordinate the delivery of cocaine from South Texas with [the Romans].
>
> In March of 2016[,] [Vazquez] coordinated the delivery of cocaine using PPM text messages with [Lechuga] and passed the number belonging to Prieto . . . . Through GPS pings, [federal agents] in Chicago identified [Movant] as holding the phone belonging to Prieto.
>
> On [March 5, 2016,] [Movant] picked up approximately 6 kilograms of cocaine. This cocaine was seized by law enforcement along with an additional 4 kilograms of cocaine of [R. Roman].

---

[3] Although Movant also agreed to the forfeiture of certain property, the details are not relevant here.

(Cr. Dkt. No. 835 at 26-27).

Upon further questioning by the District Court, Movant admitted that the facts as described by the Government were true and correct. (*Id.* at 27-28). The District Court then accepted Movant's guilty plea upon finding that Movant was competent and capable of entering an informed plea; that Movant understood the nature of the charge against him and the consequences of his plea, including the punishment faced; and that Movant's plea was knowing and voluntary and supported by the factual basis. (*Id.* at 30).

The guilty plea proceedings are discussed further below in addressing the merits of Movant's related claim of ineffective assistance.

**D. Sentencing**

The U.S. Probation Office prepared Movant's PSR pursuant to the 2016 edition of the Guidelines manual. (Cr. Dkt. No. 604 at 36).

Movant's role in the conspiracy was described in the PSR as that of "a narcotics and currency stash house caretaker as well as a street-level vendor and distributor . . . ." (*Id.* at 30). The PSR recommended holding Movant responsible for all the narcotics seized on March 5, 2016 (the day of Movant's arrest). (*Id.* at 30-31, 36). It was noted in this regard that Movant "worked closely" with R. Roman, received the six kilograms of cocaine found in the duffel bag from R. Roman, and was, therefore, likely aware of the rest of the cocaine found at R. Roman's residence. (*Id.* at 30). The PSR also deemed R. Roman's possession of the firearms to be reasonably foreseeable to Movant on grounds that firearms are "consistent with the drug trafficking and money laundering trade." (*Id.* at 30-31).

For purposes of the PSR, Movant's base offense level was calculated under § 2D1.1(c) at 30 considering the drug quantities involved in the offense, including the ten kilograms of cocaine

seized on March 5, 2016. (*Id.* at 36). Based on the firearms seized from R. Roman's residence, the PSR recommended an increase of two levels under § 2D1.1(b)(1) for the possession of a dangerous weapon.[4] (*Id.* at 37). The PSR calculation included a two-level decrease under § 3E1.1(a) for Movant's acceptance of responsibility by pleading guilty and admitting the conduct comprising the conviction offense. (*Id.*). Indeed, Movant submitted Movant's offense level was calculated by the PSR, therefore, at a total of 30. (*Id.*). Notably, no recommendation was made for the application of the safety valve and the related two-level decrease considering that Movant had yet to debrief.[5] (*See id.*).

Mr. Merino submitted written objections to the PSR on Movant's behalf, arguing primarily against the two-level weapon enhancement. (Cr. Dkt. No. 578 at 1-2). Mr. Merino contended that R. Roman's possession of firearms was not reasonably foreseeable to Movant insofar as the sawed-off shotgun was "out of sight and out of reach in the basement" and the other firearms were in a locked safe for which R. Roman did not know the combination. (*Id.* at 1-2). According to Mr. Merino, there was "no evidence to suggest that [Movant] was aware of the firearms' presence or location" or that Movant "had access to the area[s] of the home where the firearms were located."

---

[4] The § 2D1.1(b)(1) enhancement applies "[i]f a dangerous weapon (including a firearm) was possessed . . . ." U.S.S.G. § 2D1.1(b)(1). To prove possession, the government can prove either that the defendant personally possessed the weapon or, alternatively, where someone else involved in the commission of the offense possessed the weapon, that the defendant could have reasonably foreseen that possession. *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991).

[5] Under the safety valve, the court must sentence a defendant without regard to certain statutory mandatory minimum sentences, including those under 21 U.S.C. §§ 841 and 846, where the following five conditions are met: (i) the defendant does not have more than one criminal history point; (ii) the defendant did not use violence or threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (iii) the offense did not result in death or serious bodily injury; (iv) the defendant was not an organizer, leader, manager, or supervisor and was not engaged in a continuing criminal enterprise; and (v) not later than the time of the sentencing hearing, the defendant has truthfully provided all information to the Government the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. U.S.S.G. § 5C1.2(a). Pursuant to § 2D1.1(b)(17), if the defendant meets these safety valve criteria, the offense level is decreased by two levels. U.S.S.G. § 2D1.1(b)(17) (Nov. 2016).

(*Id.* at 2). Mr. Merino also argued that because some of the firearms were registered, they were less likely to be used as "tools of the trade" in drug trafficking, and that "the Romans [were] not known to tote guns or use guns in drug transactions." (*Id.*).

Separately, Mr. Merino objected that the PSR did not recommend the safety valve reduction. (*Id.* at 1). In support of the reduction, Mr. Merino indicated that Movant intended to truthfully debrief regarding the offense for purposes of meeting the safety valve criteria. (*Id.*). Mr. Merino also objected that the PSR did not recommend an extra one-level reduction for acceptance under § 3E1.1(b). (*Id.* at 2).

Movant subsequently debriefed with investigators, but the Government disputed whether Movant was being truthful and did not recommend the application of the safety valve. The main factual point in dispute concerned the source of supply for the cocaine seized from the Romans and made the basis of Count One. The parties filed written briefs on the matter. Mr. Merino offered factual circumstances to corroborate Movant's representations (Cr. Dkt. No. 723), while the Government asserted that Movant's representations were contradicted by intercepted communications (Cr. Dkt. No. 727).[6]

Sentencing was held on November 14, 2017. (Cr. Dkt. Entry dated November 14, 2017). Mr. Merino re-urged his objection to the weapon enhancement. (Cr. Dkt. No. 836 at 5). The District Court overruled this objection relying on Fifth Circuit precedent that firearms are "tools of the trade" for drug traffickers and concluding that R. Roman's possession of the firearms was foreseeable to Movant. (*Id.* at 5-6).

The District Court engaged in a sealed bench conference with the parties concerning the safety valve. (*Id.* at 3). Back on the record, Mr. Merino contended that that Movant had been

---

[6] The parties' respective sentencing-related briefs are filed under seal. The contents of these briefs are discussed in more general terms herein given their sensitive nature.

"truthful with the Government and he generally agreed to everything in the [PSR] and under proffer gave some additional information." (*Id.* at 4-5). The District Court ruled, however, that Movant did not qualify due to Movant's failure to truthfully debrief. (*Id.* at 5, 7-8). In this respect, the District Court concluded that—

> —the information provided by the Government was more likely than not the correct and actual version of events and that they sustained their burden of proof by a preponderance of the evidence and that [Movant] on that contradicting point, then, found that his testimony was less credible than the Government's evidence.

(*Id.* at 8). Notably, the District Court made a related finding that the application of the weapon enhancement did not render the safety valve inapplicable given that Movant did not personally possess the firearms. (*Id.* at 6).

Otherwise, upon Mr. Merino's request, the District Court reduced Movant's offense level by a third point for acceptance of responsibility. (*Id.*).

The District Court calculated an offense level of 29 and a criminal history category of I, yielding an advisory sentencing range of 87 to 108 months, although the minimum possible sentence became 120 months of imprisonment given Movant's failure to qualify for the safety valve. (*Id.* at 8). Movant was sentenced to the minimum mandatory term of 120 months. (*Id.*).

The sentencing proceedings are discussed further below in addressing the merits of Movant's related claim of ineffective assistance.

**E. Appeal**

In November 2017, Mr. Merino filed a notice of appeal. (Cr. Dkt. No. 729). He then moved to withdraw as trial counsel (Cr. Dkt. No. 731), contemporaneously requesting that appellate counsel be appointed for Movant (Cr. Dkt. Nos. 732, 733). After allowing Mr. Merino's

withdrawal (Cr. Dkt. No. 750), the Court appointed Ms. Carmen Mae Roe as appellate counsel (Cr. Dkt. Nos. 751, 783).[7]

On appeal, the only issue raised by Ms. Roe involved the District Court's application of the weapon enhancement under § 2D1.1(b)(1). *United States v. Roman*, 747 F. App'x 969, 970 (5th Cir. 2019) (per curiam). Through an opinion dated January 11, 2019, the Fifth Circuit affirmed the District Court's sentence and judgment, holding that the District Court did not err in applying the sentencing enhancement. *Id.* at 970-71. The Fifth Circuit concluded that the Government had met its initial burden to show by a preponderance of the evidence that R. Roman possessed the firearms to be used in connection with the drug trafficking and that Movant could have foreseen the same:

> The Government made that showing by providing evidence that coconspirator [R. Roman] possessed weapons and ammunition in his residence where agents discovered $48,000 in currency along with 4.72 kilograms of cocaine found concealed in a vehicle parked on [R. Roman's] property. Based on the Government's investigation, evidence was provided that [the Romans] were part of a large drug trafficking conspiracy in which they participated by storing and delivering large amounts of cocaine and currency. The district court's comments at sentencing showed that, in making its determination, it relied on that evidence and not solely on a presumption that the use of firearms in drug trafficking is always foreseeable.

*Id.* at 970. The Fifth Circuit also held that Movant had failed to provide rebuttal evidence showing it was clearly improbable that the firearms were connected with the drug trafficking activity:

> [Movant's] alleged lack of knowledge of the presence of the firearms was not a factor because the relevant inquiry is whether such possession was reasonably foreseeable to him. Additionally, the fact that the firearms were not located in the same specific location as the drugs and currency [was] not controlling because the dispositive issue is whether the firearms were accessible to protect the drugs and currency. Further, the significant amounts of drugs and money involved in the conspiracy increased the likelihood, and therefore the foreseeability, that those involved in the conspiracy will have dangerous weapons.

---

[7] Mr. Christopher Sully was initially appointed as appellate counsel, but he was allowed to withdraw due to a conflict of interest. (Cr. Dkt. Nos. 752, 773, 782).

*Id.* at 970-71 (internal citations omitted). The District Court's related factual findings, the Fifth

Circuit further concluded, were plausible based on the entire record, and, therefore, were not

clearly erroneous. *Id.* at 971.

Movant petitioned the Supreme Court for a writ of certiorari, but the petition was denied

on May 20, 2019. (Cr. Dkt. No. 1031).

The appellate proceedings are discussed further below in addressing the merits of Movant's

related claim of ineffective assistance.

## F. Section 2255 Proceedings

On April 13, 2020, Movant filed the Section 2255 Motion (Civ. Dkt. No. 1) together with

a memorandum of law (Civ. Dkt. No. 1-1).[8] The Government was directed to file an answer or

other response by July 15, 2020, and Movant was allowed until August 14, 2020 to file his own

responsive briefing. (Civ. Dkt. No. 2). The Government timely filed its Motion for Summary

Judgment.[9] (Civ. Dkt. No. 5). Movant did not file anything in response.

## II. GROUNDS FOR RELIEF

In seeking § 2255 relief, Movant raises multiple claims of ineffective assistance of

counsel.[10] For one, Movant appears to claim that his guilty plea was affected by Mr. Merino's

misrepresentations as to the application of the safety valve. (Civ. Dkt. No. 1 at 5; Civ. Dkt. No.

1-1 at 17). Next, Movant raises several sub-claims of ineffective assistance at sentencing relating

---

[8] This is the date on which Movant declares he placed the Section 2255 Motion in the prison mailing system. (Civ. Dkt. No. 1 at 12). Filings by *pro se* prisoners are governed by the mailbox rule, such that they are deemed filed as soon as they are deposited into the prison mail system. *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011) (per curiam).

[9] The Government does not raise any procedural defaults or defenses based on the timing of the Section 2255 Motion, nor has the Magistrate Judge identified any related concerns.

[10] Because Movant is proceeding *pro se*, his pleadings are to be construed liberally. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

to Mr. Merino's alleged failure to adequately object to and address the application of the weapon enhancement (Civ. Dkt. No. 1 at 4; Civ. Dkt. No. 1-1 at 9-16), as well as Mr. Merino's alleged failure to properly advocate for the safety valve (Civ. Dkt. No. 1-1 at 17-21). Movant also complains of Ms. Roe's failure to raise the denial of the safety valve as an issue on direct appeal. (Civ. Dkt. No. 1 at 7; Civ. Dkt. No. 1-1 at 21-23).

## III. LEGAL STANDARDS

### A. Collateral Review Under § 2255

Section 2255 provides a federal prisoner with a post-conviction remedy to test the legality of their detention by filing a motion to vacate their judgment and sentence before the trial court. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)). There are four grounds on which a federal prisoner may seek § 2255 relief: (i) the sentence was imposed in violation of the Constitution or federal law; (ii) the court was without jurisdiction to impose the sentence; (iii) the sentence exceeds the statutory maximum; or (iv) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). The movant has the burden to establish their right to relief by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

A § 2255 motion may be denied without hearing if the motion and record conclusively show movant is not entitled to relief. *United State v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990).

## B. Ineffective Assistance of Counsel

An ineffective-assistance-of-counsel claim raised through a § 2255 motion is analyzed according to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Grammas*, 376 F.3d at 436. Under *Strickland*, a movant must show that counsel's performance was both (i) deficient and (ii) prejudicial. *Strickland*, 466 U.S. at 687-88, 694.

Counsel's performance is deficient where it falls below an objective standard of reasonableness. *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012). In reviewing this *Strickland* factor, "every effort [is] made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. This requires courts to be "highly deferential" and "apply a strong presumption that counsel's performance was reasonable or 'might be considered sound trial strategy.'" *Juarez*, 672 F.3d at 386 (quoting *Strickland*, 466 U.S. at 689).

In terms of prejudice, the movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This showing is specific to the stage of the proceedings in which the deficient performance is alleged to have occurred. For example, in the guilty plea context, a movant must show that they would not have pleaded guilty and would instead have insisted on a trial. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 60 (1985)). A claim of ineffective assistance at sentencing requires a showing of a reasonable probability that the movant would have received a lesser sentence. *United States v. Ayers*, 2010 WL 2487072, at *9 (S.D. Tex. June 14, 2010) (citing *Grammas*, 376 F.3d at 438-39). On appeal, where the ineffective assistance is based on appellate counsel's failure to raise an issue, the movant must show "that the appeal would have had, with reasonable probability, a different outcome if

the attorney adequately addressed the issue[,]" and then "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001).

As a general matter, the failure to raise a meritless argument is an insufficient basis for ineffective assistance because the result of the proceeding in question would not have been different had the issue been raised. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999).

Also, mere conclusory or speculative allegations of ineffective assistance do not raise a constitutional issue. *Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir. 1994) (per curiam); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

If the movant fails to prove one *Strickland* prong, the other prong need not be considered; nor must the prongs be analyzed in any particular order. *Strickland*, 466 U.S. at 697.

## C. Valid Guilty Plea

Movant's claim of ineffective assistance as to the counseling of his guilty plea can also be interpreted as a direct attack on the validity of the guilty plea itself. *See United States v. Mendoza*, 2019 WL 2189126, at *4-5 (S.D. Tex. May 21, 2019) (determining whether guilty plea was rendered unknowing and involuntary where defendant alleged he had been led to believe his debriefing would qualify him for a sentencing reduction); *see also Gallegos v. United States*, 2014 WL 3853489, at *2-5 (E.D. Tex. Aug. 4, 2014) (assessing validity of guilty plea and ineffective assistance under *Strickland* where defendant claimed his plea was unknowing and involuntary because he was pressured into it by counsel); *Gates v. United States*, 2013 WL 6405713, at *3 (S.D. Ill. Dec. 6, 2013) (assessing validity of guilty plea where defendant alleged that plea was not knowing and voluntary due to ineffective assistance of counsel).

A guilty plea is valid only if entered voluntarily, intelligently, and knowingly. *Brady v. United States*, 397 U.S. 742, 748 (1970). These elements correspond to the three core concerns that are the focus of a challenge to guilty plea proceedings: the absence of coercion; the defendant's understanding of the charges; and the defendant's realistic understanding of the consequences of their plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir.1993).

Whether a guilty plea is made "voluntarily" examines the absence of coercion. A plea is voluntary if it did not result from threats, misrepresentation, or unfulfilled promises. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir.1997) (citing *Brady*, 397 U.S. at 755). Where a defendant pleads guilty based on a promise by their own counsel or the prosecutor, whether or not that promise can be fulfilled, breach of the promise renders the plea involuntary. *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000). On the other hand, a prediction, prognosis, or statement of probabilities about the duration of a sentence, for example, is not an actual promise that will invalidate a plea. *Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989). Nor is a statement of belief about the potential application of a basis for a sentencing reduction, such as the safety valve. *See United States v. Buck-Soltero*, 628 F. App'x 246, 247-48 (5th Cir. 2015) (per curiam).

A plea is made "intelligently" where the defendant has real notice of the true nature of the charge they are facing. *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (quotations omitted).

A "knowingly" entered plea refers to whether the defendant has a realistic understanding of the plea's consequences. *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002) (per curiam) (citing *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir. 2000)). Generally, this requirement is satisfied if the defendant understands both the maximum potential prison sentence (and fine) and any mandatory minimum sentence. *See United States v. Rivera*, 898 F.2d 442, 447 (5th Cir.

1990); *see also United States v. Soliz*, 359 F. App'x 466, 470 (5th Cir. 2009) (per curiam) (citing *United States v. Still*, 102 F.3d 118, 122-23 (5th Cir. 1996)).

In determining whether a plea was entered voluntarily, intelligently, and knowingly, courts examine the substance of the plea colloquy. *Guerrero v. United States*, 2015 WL 13666908, at *6 (S.D. Tex. July 13, 2015) (citing *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002)). A defendant will not ordinarily be allowed to refute their own testimony given under oath at a plea hearing. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Solemn declarations in open court carry a strong presumption of verity, acting as a formidable barrier in subsequent collateral proceedings. *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)) (quotations omitted). A defendant must also overcome the "great evidentiary weight" and presumption of regularity given to court records, including a signed, unambiguous plea agreement. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994); *see also Webster v. Estelle*, 505 F.2d 926, 929-930 (5th Cir. 1974).

To overcome these "heavy burdens," a defendant must show that their guilty plea was so much the product of misunderstanding, duress, or misrepresentation by the court, prosecutor, or defense counsel as to make the plea a constitutionally inadequate basis for imprisonment. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1984) (quoting *Blackledge*, 431 U.S. at 75) (quotations omitted). A defendant's own affidavit, containing self-serving conclusional allegations, is insufficient to overcome this burden. *United States v. Merrill*, 340 F. App'x 976, 978 (5th Cir. 2009) (per curiam) (citing *Cervantes*, 132 F.3d at 1110); *see also United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986). The defendant must instead present affidavits from reliable third parties conveying the exact terms of any alleged promise, the time and place of the promise, and the identity of an eyewitness to the promise. *Merrill*, 340 F. App'x at 978 (citing

*Cervantes*, 132 F.3d at 1110). Absent these indicia of the likely merit of a defendant's contentions, collateral relief may be denied without a hearing. *Cervantes*, 132 F.3d at 1110.

## IV. ANALYSIS

Each of the three classes ineffective assistance claims raised by Movant will be discussed in turn.

### A. Counseling of the Guilty Plea

Movant appears to suggest that his guilty plea was affected by Mr. Merino's improper representations as to sentencing. According to Movant, Mr. Merino told him prior to the re-arraignment that he was eligible for and would receive the benefit of the safety valve. (Civ. Dkt. No. 1 at 5; Civ. Dkt. No. 1-1 at 17). Assuming the application of the safety valve, Movant would have been eligible for a sentence below the statutory, mandatory minimum of ten years of imprisonment. *See* U.S.S.G. § 5C1.2(a); *see also* 21 U.S.C. 841(b)(1)(A). He also would have been eligible for an additional decrease of two levels from his offense level under the Guidelines. *See* U.S.S.G. § 2D1.1(b)(17) (Nov. 2016). As already discussed, the District Court rejected Mr. Merino's request for the safety valve upon finding that Movant had not truthfully debriefed and sentenced Movant to the mandatory minimum.

Here, Movant fails to establish that his plea was invalidated by Mr. Merino's alleged misrepresentations, as a review of the plea colloquy at the re-arraignment reveals that Movant entered his plea voluntarily and knowingly.

Movant was placed under oath. (Cr. Dkt. No. 835 at 4). The District Court warned he could be prosecuted for perjury if he lied, and Movant indicated he understood. (*Id.*). The District Court asked Movant questions relevant to determining Movant's competency and ability to understand the proceedings. (*Id.* at 5-8). Movant stated he had gone through eleventh grade in

Chicago and understood English. (*Id.* at 7). He affirmed that he was generally in good health, denied having ever been treated for mental or psychological problems, and denied being under the influence of medications or drugs affecting his ability to understanding the District Court's questions. (*Id.*). Movant affirmed he felt competent to enter his plea. (*Id.* at 8).

The District Court then allowed Movant the opportunity to sign the plea documents, specifically, the plea agreement. (*Id.*; *see also* Cr. Dkt. No. 541).

The District Court proceeded to ask Movant about the assistance of defense counsel. (Cr. Dkt. No. 835 at 10-11). Movant affirmed that he had the chance to discuss the charges with defense counsel and denied having any questions about the charges. (*Id.*) Movant also affirmed his satisfaction with defense counsel's advice and representation in the case. (*Id.* at 11).

The Government then read Count One to Movant, who proceeded to enter his plea of guilty. (*Id.* at 12-13). The District Court admonished Movant as to the right to trial and associated rights he was waiving by pleading guilty. (*Id.* at 15-18). Movant stated he understood. (*Id.*).

Next, the District Court explained the possible statutory penalties Movant was facing for pleading guilty, including the term of imprisonment, maximum fine, and the term of supervised release. (*Id.* at 19). Movant was admonished on Count One to a minimum mandatory sentence of ten years of imprisonment up to life, a fine of up to ten million dollars, and a term of supervised release of up to life. (*Id.*). Movant affirmed that he understood these to be the penalties he faced. (*Id.* at 19-20). He also affirmed his understanding that a guilty plea could result in collateral consequences like revocation of his lawful status to remain in the United States and deportation to his home country. (*Id.* at 22-23).

The District Court explained the sentencing determination and the advisory nature of the Guidelines. (*Id.* at 20-21). In doing so, the District Court admonished that the application of the

Guidelines would not be known until after a probation officer prepared a presentence report and defense counsel had the opportunity to review the report with Movant and submit sentencing objections. (*Id.*). The District Court also explained that it could vary or depart from the Guidelines, potentially issuing the maximum sentence faced, and that Movant would not be able to take back his guilty plea. (*Id.* at 21). Movant affirmed that he understood what the District Court had explained, as well as the advisory, non-binding nature of the Guidelines. (*Id.* at 20-21). Movant also affirmed that he had spoken with defense counsel about the Guidelines and how they might apply in his case. (*Id.* at 20).

The District Court then questioned Movant about the voluntariness of his plea. (*Id.* at 21-22). Movant denied that anyone had made him any guaranty or promise about the sentence he would receive. (*Id.*). He also denied that anyone had attempted to force him to plead guilty or told him that additional charges would be brought against him if he withheld his plea. (*Id.* at 22).

Asked by the District Court about the plea agreement, the Government summarized that Movant had agreed to plead guilty to one count and stipulate to the forfeiture of property in exchange for an offense level decrease under § 3E1.1(a) and dismissal of any remaining counts at the time of sentencing. (*Id.* at 23-24). Movant affirmed to the District Court that the Government had accurately summarized the plea agreement, and that he had reviewed and discussed the agreement with counsel before signing it. (*Id.* at 24). The District Court explained that it was not bound to follow the plea agreement, and that Movant would not have the right to take back his plea if the District Court issued a sentence less favorable than that contemplated by the agreement. (*Id.* at 25). Movant again stated he understood. (*Id.*).

Upon further questioning by the District Court, Movant indicated that he wished to persist in his plea of guilty. (*Id.*). The District Court then asked the Government to describe the factual

basis in support of the plea, which has already been reviewed above. (*Id.* at 26-27). Movant affirmed that the facts as described by the Government were true and correct. (*Id.* at 27-28). With that, the District Court accepted Movant's guilty plea. (*Id.* at 30).

As to his specific complaint, again, Movant appears to allege that his plea was rendered involuntary and unknowing by Mr. Merino's alleged misrepresentation that Movant would be allowed the benefit of the safety valve and, presumably, be sentenced below the statutory minimum of ten years' imprisonment. Insofar as Movant claims that Mr. Merino made him a promise (as opposed to a statement of probability) about the application of the safety valve, Movant fails to offer an affidavit from another person conveying, among other things, the identity of any third-party eyewitness to the alleged promise. Without such an affidavit, Movant cannot overcome his sworn declarations at the re-arraignment. Movant specifically disavowed any promise or guaranty, from anyone, about the potential sentence he would receive. In terms of that potential sentence, Movant stated he understood he was facing a statutory mandatory minimum prison term of ten years (up to life), and the District Court made no mention about the availability of the safety valve as a way to circumvent the statutory minimum. Otherwise, Movant's conclusory and self-serving assertions about Mr. Merino's alleged misrepresentations as to the safety valve are insufficient to overcome the record of his voluntary and knowing plea. *See United States v. Barron-Sanchez,* 2012 WL 12995493, at *5-6 (S.D. Tex. Nov. 14, 2012) (holding that defendant's testimony at re-arraignment contradicted his conclusory allegations that counsel advised him to enter his guilty plea with the understanding he would receive the safety valve); *see also United States v. Flores-Quirino,* 2006 WL 456245, at *6 (S.D. Tex. Feb. 24, 2006) (denying defendant's conclusory assertion of coercion because it was contradicted by his testimony).

These same shortcomings impact Movant's ability to show *Strickland* error. Defense counsel's duty when counseling a guilty plea is to ascertain that the plea is voluntarily and knowingly made. *Diaz*, 733 F.2d at 376. But in offering only conclusory allegations of unrealized promises and misleading advice, Movant fails to establish that Mr. Merino fell short of dispatching his duty. *See Cabrera-Paredes v. United States*, 2017 WL 6947930, at *7 (S.D. Tex. Dec. 26, 2017) ("Movant simply alleges that counsel promised him the safety valve, a downward departure, and leniency, but these conclusory allegations are not sufficient to establish a meritorious claim of ineffective assistance of counsel on this ground."), *report and recommendation adopted*, 2018 WL 437570 (S.D. Tex. Jan. 16, 2018).

Nor do Movant's pleadings even come close to properly alleging *Strickland* prejudice. Again, in the context of a guilty plea, a movant must show that, if not for counsel's deficient performance, they would not have pleaded guilty and would instead have insisted on a trial. *Armstead*, 37 F.3d at 206. Making this showing generally begins with the movant's own pleadings insofar as the movant must specifically allege that they would in fact have proceeded to trial had they been correctly advised. *United States v. Burns*, 2012 WL 12995136, at *3 (W.D. Tex. Oct. 1, 2012) (citing *Hill*, 474 U.S. at 60). Beyond that, the prejudice test is an objective one, "turn[ing] on what a reasonable person in the defendant's shoes would do." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (per curiam) (citing *Hill*, 474 U.S. at 59-60); *see also United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014). As the Fifth Circuit has explained, "demonstrating prejudice requires showing not only that the [movant] would have gone to trial, but also 'that going to trial . . . would have given him a reasonable chance of obtaining a more favorable result.'" *King v. Davis*, 898 F.3d 600, 605 (5th Cir. 2018) (quoting *United States v. Shepherd*, 880 F.3d 734, 743 (5th Cir. 2018)). In making this reasonableness determination, the totality of the circumstances

must be considered, *see Kayode*, 777 F.3d at 725-26, including the strength of the evidence against the movant, *see King*, 898 F.3d at 605, and the benefits the movant stood to receive from pleading guilty relative to their sentencing exposure had they gone to trial, *see United States v. Lozano*, 757 F. App'x 348, 353 n.3 (5th Cir. 2018) (per curiam).

Here, Movant cannot even begin to establish *Strickland* prejudice because nowhere through his pleadings does he ever allege that he would have insisted on going to trial had he not been told he would receive the safety valve. Moreover, at no point does Movant allege, let alone attempt to demonstrate, that there was a reasonable chance he would have been better off after trial, which "omission is fatal to his claim." *See King*, 898 F.3d at 604-05. Based on the circumstances as they existed at the time of the re-arraignment, a trial would not have been to Movant's benefit. The evidence against Movant was overwhelming—Movant and Ramos were caught red-handed with the cocaine, Movant had been the subject of electronic surveillance, and Movant made incriminating statements to investigators. In the face of a likely conviction by jury, his offense level would have totaled to 32, for a range of 121 to 151 months. On the other hand, Movant stood to benefit significantly from pleading guilty. As noted above, accounting for a downward adjustment of three levels for acceptance of responsibility, Movant scored an offense level of 29. Also, upon a truthful debrief for purposes of the safety valve, Movant's offense level would have been further reduced to 27. Considering Movant's criminal history category of I, this would have yielded an advisory imprisonment range of 70 to 87 months. While the safety valve would not necessarily have been precluded even after trial, its maximum effect could only have been achieved when paired with acceptance of responsibility upon a guilty plea.

For these reasons, the Magistrate Judge concludes that Movant's request for relief on this claim of counsel's alleged ineffectiveness in counseling the guilty plea is without merit.

**B. Assistance at Sentencing**

Movant raises three sub-claims of ineffective assistance at sentencing. First, Movant complains Mr. Merino failed to raise proper objections as to the application of the § 2D1.1(b)(1) enhancement for possession of a dangerous weapon. (Civ. Dkt. No. 1 at 4; Civ. Dkt. No. 1-1 at 9-16). Movant brings a related complaint as to Mr. Merino's alleged failure to investigate the matter of the ownership and possession of the firearms used to support the weapon enhancement. (Civ. Dkt. No. 1-1 at 11). Movant also contends that Mr. Merino failed to properly advocate for the § 5C1.2(a) safety valve. (Civ. Dkt. No. 1-1 at 17-21). Movant is unable to establish ineffective assistance based on either of these sub-claims, each of which is discussed in turn below.

　　1. Objecting to the weapon enhancement

With respect to Movant's first sub-claim, the two-level enhancement under § 2D1.1(b)(1) applies "[i]f a dangerous weapon (including a firearm) was possessed . . . ." U.S.S.G. § 2D1.1(b)(1). Notably, personal possession of a weapon by the defendant is not required; it is enough if another person involved in the offense possessed the weapon, if that possession was reasonably foreseeable to the defendant. *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991). Generally, "[i]t [is] readily foreseeable that firearms would be employed as tools of the drug trafficking trade." *United States v. Garza*, 118 F.3d 278, 286 (5th Cir. 1997). Indeed, "[t]he enhancement for weapon possession . . . reflects the increased danger of violence when drug traffickers possess weapons" and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.11).

Movant's complaints as to Mr. Merino's performance in addressing this enhancement fall into four sets of argument categories—neither of which come close to affording Movant relief.[11]

---

[11] It must be noted that, apart from these four categories, Movant expends considerable effort in challenging the District Court's legal conclusions related to the application of the enhancement. For instance, Movant

To begin, Movant takes the position that Mr. Merino should have emphasized at sentencing that Movant did not personally possess and otherwise had no actual, personal knowledge of any of the firearms used to support the application of the weapon enhancement. (Civ. Dkt. No. 1-1 at 9, 13-14). According to Movant, the "Government's investigation at most provided that [Movant] was [a] member of his brother['s] conspiracy but clearly not that he had any knowledge about the weapons, or that he ever used the weapons." (*Id.* at 14). But as the Fifth Circuit noted in denying Movant's direct appeal, application of the enhancement does not turn on issues of personal possession, use, or actual knowledge. *Roman*, 747 F. App'x at 970. It only need be *reasonably foreseeable* to the defendant that *another person* involved in the offense possessed the weapon. *Id.* (citing *United States v. Aguilar-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990)); *Hooten*, 942 F.2d at 882. Contrary to Movant's position, the Fifth Circuit routinely upholds sentences where, as here, the dangerous weapon enhancement was applied to a defendant based on the weapon's possession by a co-conspirator in a drug conspiracy, even though the defendant himself neither knew about nor personally possessed the predicate weapon. *See, e.g., United States v. Garcia*, 755 F. App'x 391, 393-94 (5th Cir. 2018) (per curiam) ("The record reflects that a coconspirator knowingly possessed a firearm during, and in connection to, activities related to the drug-distribution conspiracy. The coconspirator's possession of a gun was consistent with the aims of

---

argues that the District Court "misapplied the Guidelines by making a general presumption that firearms are 'tools of the trade' and that [it] is always foreseeable that [the firearms] will be used during criminal drug activity." (Civ. Dkt. No. 1-1 at 13). Throughout his pleadings, Movant also contends that the District Court erred in making factual findings and assessing whether the parties had met their respective evidentiary burdens. (*See id.* at 10, 12-14, 16). In just one example, Movant contends he "rebutted the evidence presented by the Government [and] overcame the inference of foreseeability[,]" thus "show[ing] that it was clearly improbable [that] the firearms found at [R. Roman's residence] could have been attributable to his participation in the conspiracy . . . ." (*Id.* at 12-13). Insofar as Movant collaterally attacks the District Court's technical application of the Guidelines under the guise of ineffective assistance of counsel, however, such claims do not give rise to a constitutional issue and, therefore, are not cognizable under § 2255. *See United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994). In any event, the Fifth Circuit ruled that the enhancement was properly applied.

[the Texas Mexican Mafia], and it was reasonably foreseeable to Garcia that guns would be used as tools of the drug trade. It is irrelevant that he may not have known about the gun or possessed it." (internal citations omitted)). Mr. Merino was not ineffective in failing to raise the meritless or otherwise inconsequential arguments proposed by Movant. *See Kimler*, 167 F.3d at 893. Moreover, based on the circumstances addressed by the Fifth Circuit (and reviewed further below), R. Roman's possession of the firearms was reasonably foreseeable to Movant.

Movant also contends Mr. Merino erred in failing to note that "[R. Roman] was not charged with the weapons found at his residence, nor [was] his sentence [ ] enhanced under . . . § 2D1.1(b)(1)." (Dkt. No. 1-1 at 10). In Movant's view, "[i]f [R. Roman] did not [personally] possess the weapons and the government determined that [R. Roman] was not liable for the same, this means that [Movant] may not be held to [have] constructively possessed the weapons." (*Id.*). Movant's argument has no basis in either law or fact. In terms of the law, "[f]indings as to [sentencing] factors may be based on uncharged conduct, and for that matter on conduct of which the defendant has been acquitted." *United States v. Jones*, 635 F.3d 909, 917 (7th Cir. 2011) (citing *Witte v. United States*, 515 U.S. 389, 402-03 (1995) and *United States v. Watts*, 519 U.S. 148, 155-57 (1997)) (internal citations omitted). In terms of the facts, Movant is simply incorrect that R. Roman did not receive the weapon enhancement at his own sentencing hearing.[12] (*United States v. Rodrigo Roman*, 7:16-CR-00876-9, Dkt. No. 705 at 16). Again, Mr. Merino did not render ineffective assistance by foregoing this meritless line of argument.

Next, Movant argues that Mr. Merino should have tried to convince the District Court that there was no nexus to the firearms insofar as the drugs seized from Movant in the duffel bag and the drugs seized from R. Roman's residence were involved in two separate conspiracies. (Civ.

---

[12] For reference, R. Roman's sentencing occurred in September 2017, or approximately two months prior to Movant's sentencing in November 2017.

Dkt. No. 1-1 at 14-16). For purposes of his guilty plea, however, Movant specifically admitted to coordinating, together with R. Roman, the delivery of the cocaine involved in the two seizures as part of the Count One conspiracy. (Cr. Dkt. No. 835 at 26-27). R. Roman admitted to the same in pleading guilty to Count One as well. (*United States v. Rodrigo Roman*, 7:16-CR-00876-9, Dkt. No. 786 at 16-17). Just as with other sworn statements, a defendant remains bound by any admissions as to the accuracy of the factual basis offered in support of their guilty plea. *See Cunningham v. United States*, 2020 WL 4340952, at *6 (N.D. Tex. June 17, 2020), *report and recommendation adopted*, 2020 WL 4339912 (N.D. Tex. July 28, 2020); *see also United States v. White*, 2018 WL 2416638, at *3 (E.D. La. May 29, 2018). Absent independent corroboration of differing allegations on collateral review, Movant cannot simply contradict his prior factual admissions made in open court. *See Day v. United States*, 2009 WL 10703348, at *3-4 (M.D.N.C. May 1, 2009), *report and recommendation adopted*, 2009 WL 10703349 (M.D.N.C. Oct. 27, 2009); *see also White*, 2018 WL 2416638 at *3. Accordingly, Mr. Merino's failure to raise these meritless issues did not amount to ineffective assistance.

With respect to the foreseeability of R. Roman's firearms possession, Movant complains that Mr. Merino did not refer to the record of the criminal investigation showing that the firearms "were locked in a safe, not near any drugs, and that the weapons at stake were at no time used in furtherance of the conspiracy." (Civ. Dkt. No. 1-1 at 16). Movant fails to establish *Strickland* error on this basis, however, because a review of Mr. Merino's written objections to the PSR reveals that he did in fact refer to these same if not substantially similar circumstances in arguing against foreseeability. Mr. Merino noted that the sawed-off shotgun was "out of sight and out of reach in the basement," that the other firearms were in a locked safe (with a combination unknown to R. Roman), and that "the Romans [were] not known to tote guns or use guns in drug

transactions." (Cr. Dkt. No. 578 at 1-2). The Fifth Circuit discussed on appeal why these arguments were nonetheless unavailing. *Roman*, 747 F. App'x at 970-71.

Separately and more globally, even assuming the District Court would have sustained one or another of Movant's proposed objections to the weapon enhancement, Movant still fails to show *Strickland* prejudice, or a reasonable probability that he would have received a lesser sentence. Movant did not truthfully debrief for purposes of receiving the benefit of the safety valve, which was the only avenue to being sentenced below the mandatory statutory minimum prison term of 120 months for his offense. So even if Movant had been subject to a lower advisory Guidelines sentencing range (assuming no weapon enhancement), the District Court would still have been limited to sentencing him to the mandatory minimum.

For these reasons, the Magistrate Judge concludes that Movant's request for relief on this sub-claim of counsel's alleged ineffectiveness at sentencing is without merit.

2. Sentencing-related investigation

Movant's next sub-claim of ineffective assistance at sentencing is predicated on Mr. Merino's alleged failure to investigate the circumstances as to the possession of the firearms. (Civ. Dkt. No. 1-1 at 11). The Government's theory, according to Movant, was that the firearms belonged to Vazquez, the Chicago-area ringleader, and were brought to R. Roman's residence by Movant.[13] (*Id.*). Though his pleadings are somewhat unclear in this regard, Movant appears to claim that, had Mr. Merino interviewed R. Roman about the matter, R. Roman would have denied Movant's involvement in transporting the weapons to the residence. (*See id.*). Calling R. Roman to then testify at sentencing, as Movant's argument goes, would have affected the District Court's determination that R. Roman's possession of the firearms was foreseeable to Movant, leading to

---

[13] In support, Movant would cite to representations made by the Government at Vazquez's sentencing. (*See* Cr. Dkt. No. 757 at 16).

the sustaining of Mr. Merino's objection to the weapon enhancement and a lower sentence. (*See id.*). "[A]s a matter of common sense, and assuming . . . that guns are tools of the trade," Movant argues, "it would not be reasonable . . . to pass on multiple firearms to his brother [R. Roman] and leave himself without protection." (*Id.*).

Generally, effective counsel must engage in a reasonable amount of pretrial investigation and "at a minimum . . . interview potential witnesses and . . . make an independent investigation of the facts and circumstances in the case." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985). Any decision not to follow a line of investigation must be based on reasoned strategy. *Smith v. Dretke*, 422 F.3d 269, 283-84 (5th Cir. 2005). When reviewing an attorney's decision, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). Insofar as counsel fails to make a reasonable investigation, the movant must specify what the investigation would have revealed and how it would have altered the outcome of the proceeding at issue. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Movant's attempt to show *Strickland* prejudice from Mr. Merino's alleged failure to interview R. Roman quickly breaks down for several reasons. First is the consideration that Movant would have been privy to the same information an interview with R. Roman would have supposedly revealed—i.e., that Movant was not involved in transporting Vazquez's firearms to R. Roman's residence. Assuming the truth of his factual assertions, Movant would have been free to testify to them himself at sentencing in support of his lack-of-foreseeability argument.

That said, it is unlikely that the testimony in question, whether coming from R. Roman or Movant himself, would have impacted the District Court's foreseeability determination. Again, it is clearly established in the Fifth Circuit that firearms are tools of the drug-trafficking trade. *Garza,*

118 F.3d at 286. Foreseeability can be inferred "if the government demonstrates that another participant knowingly possessed the weapon while he and the defendant committed the offense by jointly engaging in concerted criminal activity involving a quantity of narcotics sufficient to support an inference of intent to distribute." *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990). Moreover, a large "amount of drugs . . . delivered and [high] street value increase the likelihood—and thus foreseeability—that those involved in the conspiracy will have dangerous weapons." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 766 (5th Cir. 2008). Irrespective of whether Movant took the firearms to R. Roman's residence himself, the circumstances were such that the foreseeability of the firearms in R. Roman's possession could still have been reasonably inferred. As the Fifth Circuit noted in affirming Movant's sentence, R. Roman knowingly possessed the weapons—including a sawed-off shotgun—in his home, where agents found bulk cocaine together with $48,000 in cash, and Movant and R. Roman were jointly engaged in storing and delivering narcotics as part of a large drug-trafficking conspiracy. *Roman*, 747 F. App'x at 970-71. Again, the Fifth Circuit routinely upholds the application of the weapon enhancement in situations just like the one at hand. *See, e.g., Garcia*, 755 F. App'x at 393-94.

Regardless, as already reviewed above, even if an objection as to the weapon enhancement had been sustained, the District Court would still have been limited to sentencing Movant to a statutory mandatory minimum higher than the advisory Guidelines range because of Movant's refusal to truthfully debrief for purposes of the safety valve.

For these reasons, the Magistrate Judge concludes that Movant's request for relief on this sub-claim of counsel's alleged ineffectiveness at sentencing is without merit.[14]

---

[14] To the extent that Movant's allegations can be construed to raise a sub-claim of ineffective assistance based on Mr. Merino's failure to call R. Roman as a witness at the sentencing hearing, such a claim also fails. In the Fifth Circuit, complaints of uncalled witnesses are disfavored "because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated

### 3. Safety valve

Movant also raises a sub-claim of ineffective assistance at sentencing implicating the application of the safety valve reduction.[15] (Civ. Dkt. No. 1-1 at 17-21).

The safety valve allows for sentencing below an otherwise applicable statutory mandatory minimum sentence when the sentencing court determines that certain conditions have been met. U.S.S.G. § 5C1.2(a). These requirements are as follows: (i) the defendant does not have more than one criminal history point; (ii) the defendant did not use violence or threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (iii) the offense did not result in death or serious bodily injury; (iv) the defendant was not an organizer, leader, manager, or supervisor and was not engaged in a continuing criminal enterprise; and (v) the defendant truthfully debriefed. *See id.* Most relevant here is the debrief requirement, which more particularly provides that—

> —*not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan,* but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

---

are largely speculative." *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir.2008) (per curiam) (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983)). To establish ineffective assistance based on an uncalled witness, a movant must do the following: (i) name the witness; (ii) demonstrate that the witness was available to testify and would have done so; (iii) set out the content of the witness's proposed testimony; and (iv) show that the testimony would have been favorable, i.e., a reasonable probability that the uncalled witness would have made a difference to the result. *See Alexander v. McCotter*, 775 F.2d 595, 602-03 (5th Cir. 1985); *see also Bray*, 265 F. App'x at 298 (citing *Alexander*, 775 F.2d at 602-03). Here, Movant does not show that R. Roman was willing to testify for him at sentencing, such as by offering R. Roman's affidavit stating as much. The content of R. Roman's testimony is also largely speculative and subject to conjecture based on Movant's pleadings. Nevertheless, as already discussed, there is no reason to believe that R. Roman's testimony would have resulted in a lower sentence for Movant.

[15] As discussed above with respect to the weapon enhancement, insofar as Movant is collaterally attacking the District Court's technical application of the safety valve under the Guidelines, such does not give rise to a constitutional issue cognizable under § 2255. *See Segler*, 37 F.3d at 1134.

U.S.S.G. § 5C1.2(a)(5) (emphasis added). The sentencing court must afford the government an opportunity to make a recommendation as to the safety valve. U.S.S.G. § 5C1.2, comment. (n.8). The defendant has the burden of showing their eligibility for the safety valve, including that they truthfully debriefed. *United States v. Flanagan*, 80 F.3d 143, 146-47 (5th Cir. 1996).

According to Movant, Mr. Merino's "lack of objections and admissions [regarding the safety valve] were so prejudicial as to render his performance ineffective." (Civ. Dkt. No. 1-1 at 17). Movant notes "the [District Court] made it clear that [he] had not [personally] possessed the weapons confiscated at [R. Roman's] residence and wherefore, he was [eligible] for the Safety Valve departure." (*Id.* at 17-18). Mr. Merino "could have pursued [this] Safety Valve alternative[,]" Movant continues, "and the [District Court] could have acquired jurisdiction to sentence [Movant] to a sentence other than the minimum mandatory." (*Id.* at 21).

Movant fails to establish *Strickland* error and prejudice. Irrespective of whether Movant personally possessed the firearms, the District Court held that Movant did not qualify for the safety valve insofar as he failed to meet the debrief requirement. As reviewed above, Mr. Merino tried to convince the District Court that Movant was being truthful as to the source of the narcotics, but the District Court credited the Government's evidence over Movant's representations. Courts have held that, even where counsel completely fails to advocate for the safety valve, a movant cannot establish either *Strickland* prong if the debrief requirement has not been met. *See Canales v. United States*, 2013 WL 4782371, at *3 (S.D. Tex. Sept. 4, 2013).

For these reasons, the Magistrate Judge concludes that Movant's request for relief on this sub-claim of counsel's alleged ineffectiveness at sentencing is without merit.

## C. Appellate Counsel's Performance

Movant also takes issue with the failure of appellate counsel, Ms. Roe, to raise the safety valve issue on direct appeal. (Civ. Dkt. No. 1 at 7; Civ. Dkt. No. 1-1 at 21-23). Movant takes note again of the District Court's finding that the weapon enhancement did not disqualify him from the safety valve. (Civ. Dkt. No. 1-1 at 21). "[I]f . . . appellate counsel had raised that he was suitable for the safety valve," Movant argues, "the [Fifth Circuit] would have [imposed] a sentence other tha[n] [the] mandatory minimum of 120-months." (*Id.* at 22).

"In determining whether to raise the denial of safety valve on appeal, appellate counsel [is] presumed to be mindful of the standard of review governing such claims." *Barron-Sanchez*, 2012 WL 12995493 at *8 (S.D. Tex. Nov. 14, 2012). Findings of fact pertaining to the application of the Guidelines are reviewed for clear error, while legal interpretations are reviewed *de novo*. *United States v. Villanueva*, 408 F.3d 193, 203 n.9 (5th Cir. 2005). "[I]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though it would have weighed the evidence differently." *Barron-Sanchez*, 12995493 at *8 (citing *United States v. Davis*, 76 F.3d 82, 84 (5th Cir. 1996)).

Based on this standard, Ms. Roe could have reached the conclusion that Movant was unlikely to prevail on the safety valve issue before the Fifth Circuit. *See id.* The Fifth Circuit has affirmed denial of the safety valve where, as here, the district court declined to credit the defendant's testimony because that testimony was contradicted by information gathered by the government. *See United States v. Sanchez*, 347 F. App'x 38, 40 (5th Cir. 2009) (per curiam) (citing *United States v. Edwards*, 65 F.3d 430, 433 (5th Cir. 1995)). Movant, therefore, fails to show that Ms. Roe's conduct fell below reasonable professional standards, nor can he demonstrate prejudice from Ms. Roe's failure to raise denial of the safety valve on appeal. *See United States v. Reinhart*,

357 F.3d 521, 530 (5th Cir. 2004) (recognizing that prejudice requires a showing that relief would have been afforded on appeal).

For these reasons, the Magistrate Judge concludes that Movant's request for relief on this claim of counsel's alleged ineffectiveness on appeal is without merit.

## V. CONCLUSION

### *Recommended Disposition*

After review of the record and relevant law, the Magistrate Judge respectfully RECOMMENDS that the Government's Motion for Summary Judgment (Civ. Dkt. No. 5; Cr. Dkt. No. 1096) be GRANTED, that the Section 2255 Motion (Civ. Dkt. No. 1; Cr. Dkt. No. 1090) be summarily DENIED, that Movant's grounds for § 2255 relief be DISMISSED with prejudice, and that this civil action be DISMISSED.

### *Certificate of Appealability*

The Magistrate Judge must also address the matter of the issuance of a certificate of appealability ("COA").

A movant may not appeal the final order of a habeas corpus proceeding "unless a circuit justice or judge issues a [COA]." 28 U.S.C. § 2253(c)(1). Rule 11 of the Rules Governing Section 2255 Proceedings instructs that the District Court "must issue or deny a COA when it enters a final order adverse to the applicant." A movant is entitled to a COA when he shows that a reasonable jurist would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c).

Because the undersigned concludes that Movant fails to meet this threshold, it is therefore RECOMMENDED that the District Court deny a COA.

### *Notice to the Parties*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from *de novo* review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of clear error or manifest injustice.

### *Directive to Clerk of Court*

The Clerk of Court is DIRECTED to forward a copy of this report to the parties by any receipted means.

DONE at McAllen, Texas this 26th day of January 2021.

J. SCOTT HACKER
United States Magistrate Judge